```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
ROBERT KLEIN,

                Plaintiff,
                                              MEMORANDUM AND ORDER
        - against -
                                                16 Civ. 2264 (NRB)
CITY & COUNTY PAVING CORP., and
PRINCIPAL BUILDING SERVICES, LLC,

                Defendants.
-------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On the evening of February 6, 2014, plaintiff Robert Klein slipped and fell on ice in a parking lot next to the New York Times's facility in College Point, Queens. Klein worked for the New York Times ("the Times"), which had contracted maintenance of the facility to defendant Principal Building Services. Principal, in turn, had subcontracted snow removal to defendant City & County Paving Corp. (C&C). Klein sued both Principal and C&C for negligence, and Principal and C&C each then asserted cross-claims against the other.

Principal and C&C now move for summary judgment against Klein and against each other. As we will explain, Principal and C&C's motions are granted as to Klein's negligence claims. Because summary judgment against Klein on those claims renders academic the questions of contribution and indemnification raised by the cross-claims, the remainder of those motions is denied as moot.

1

I. **Background**

   A. **Facts**[1]

At the time of Klein's accident, a contract between the Times and Principal was in effect under which Principal would provide facility management services. See Facilities Maintenance Agreement (FMA), ECF No. 97-1. The FMA provided, in relevant part, that "Contractor [Principal] will provide comprehensive facility management services, as an independent Contractor, for The Times's printing facility at One New York Times Plaza, College Point, New York (the 'College Point Facility')." FMA § 1.1. Principal's "responsibility will include any and all work associated with the operation and maintenance of HVAC and building systems as set forth in Article 3.0, exclusive of productive equipment, at the College Point Facility." Id. § 1.2.

Article 3.0 of the FMA, in turn, provided that Principal "will be responsible for the operation and maintenance of the HVAC system at the College Point facility which responsibilities shall be the following support activities," which included "[l]andscaping and snow removal." Id. § 3.1. The FMA provided that Principal "will

---

[1] We draw these facts from (1) C&C's Rule 56.1 Statement, ECF No. 54; (2) Klein's Rule 56.1 Counterstatement to C&C's statement, ECF No. 76; (3) Principal's Rule 56.1 Counterstatement to C&C's statement, ECF No. 78; (4) Principal's Rule 56.1 Statement, ECF No. 71; (5) Klein's Rule 56.1 Counterstatement to Principal's statement, ECF No. 77; (6) the Declaration of Matthew J. Rodriguez dated October 30, 2017, ECF No. 51; (7) the Declaration of Jennifer R. Loyd dated October 30, 2017, ECF No. 70; and (8) the parties' August 27, 2018 letter to the Court attaching the Facility Maintenance Agreement between the Times and Principal, ECF No. 97. C&C does not appear to have filed a Rule 56.1 Counterstatement to Principal's Rule 56.1 statement.

2

provide labor directly and/or sub-contract labor to perform the aforementioned services and functions." Id. § 3.2.

For the winter of 2014, Principal had subcontracted snow removal to C&C under a Snow Plow Agreement (SPA). See Rodriguez Decl. ex. 10, ECF No. 51-10. The SPA established the rates that Principal would pay C&C for snow plowing, which ranged between $7,900 and $15,750 based on the amount of snow, and the rates for ancillary services, such as $2,650 per application of salt. Id. The SPA also provided that "[a]ll work will be on an 'Automatic Basis' for snow accumulations of two (2") inch[es] or more, unless specified by the 'Customer' [Principal]. Snow removal of less than two (2") inches will be on an 'On-Call' by the 'Customer' basis." Id. However, C&C was not "responsible for plowing in between parked vehicles and/or trash containers." Id. Further, the SPA provided that "the Customer shall hold harmless City & County Paving Corp to the fullest extent permitted by law, its agents and/or employees, from and against all claims, damages, losses and expenses for bodily injury, illness and/or property damage which may arise after said contractor shall have finished its operation and performance of the work." Id.

Several inches of snow had fallen the day before Klein's accident, February 5, 2014. Klein 56.1 Counterstatement to C&C

3

¶ 3; Rodriguez Decl. ex. 17 (local weather records).[2] C&C had been on site to perform snow removal on February 5, as documented in an invoice sent from C&C to Principal. Klein 56.1 Counterstatement to C&C ¶ 17; Rodriguez Decl. ex. 14 at 3. According to the invoice, C&C had been on site from 3:00 a.m. to 4:30 p.m. on February 5, plowing between 4 and 6 inches of snow and salting the area twice. Klein 56.1 Counterstatement to C&C ¶ 17; Rodriguez Decl. ex. 14 at 3.

No additional snow fell the next day, February 6. Klein 56.1 Counterstatement to C&C ¶ 3; Rodriguez Decl. ex. 17. C&C was nonetheless on site to "perform[] snow pile removal (using loader backhoes, dump trucks and bobcats) . . . from 7:00am to 3:30pm." Klein 56.1 Counterstatement to C&C ¶ 18. This work was again memorialized in an invoice from C&C to Principal. Id.; see also Rodriguez Decl. ex. 14 at 4. While C&C's representative testified that salting occurred, Klein disputes this fact. Klein 56.1 Counterstatement to C&C ¶ 19. Indeed, the invoice for February 6 lacks a separate charge for salt application (aside from C&C's

---

[2] Principal's Rule 56.1 Counterstatement to C&C's 56.1 Statement contains numerous responses averring that "Principal lacks knowledge or information sufficient to either admit or deny the statement set forth in this paragraph." E.g., Principal 56.1 Counterstatement ¶¶ 1-10, 17-18. A counterstatement submitted pursuant to Local Rule 56.1 is not an answer or a response to requests for admission, and indeed, a response controverting any statement of material fact "must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(d). "A nonmovant cannot raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information.'" AFL Fresh & Frozen Fruits & Vegetables, Inc. v. Del-Mar Food Servs. Inc., No. 06 Civ. 2142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (internal quotation marks omitted).

salt application made after Klein's fall, see Principal 56.1 Counterstatement ¶ 16), which were explicitly noted on the February 5 invoice and at least one other invoice in the record. Compare Rodriguez Decl. ex. 14 at 2-3, with id. at 4.

Klein drove to work at College Point facility that evening, and had parked his car in the employee parking lot. Klein 56.1 Counterstatement to C&C ¶¶ 1-2. As Klein walked towards the building entrance around 7:00 p.m., he slipped and fell on a patch of ice. Id. ¶¶ 2, 5. There was no snow in the immediate area where Klein fell, and Klein had not seen any ice in the area prior to his fall. Id. ¶ 6. Klein returned to the area where he fell in order to take pictures approximately 30 minutes thereafter. Id. ¶ 7; see Rodriguez Decl. ex. 12 (photos). Klein eventually retired after the accident, either later in 2014 or in early 2015. Klein Dep. 14:2-12, ECF No. 51-11.

**B. Procedural History**

Klein sued C&C in Bronx County Supreme Court in February 2016, and C&C removed the case to this Court on March 30, 2016. [ECF No. 3.] C&C impleaded the Times and Principal [ECF No. 14], and the Times asserted crossclaims against Principal [ECF No. 19]. Klein amended his complaint to add Principal as a defendant [ECF No. 24], and Principal asserted its own claims against C&C and the Times [ECF No. 28].

Principal and C&C subsequently discontinued their actions against the Times. [ECF Nos. 33, 34.] After the Times's dismissal from this action, the following claims remained: (1) Klein's negligence claims, asserted in his first amended complaint, against Principal and against C&C [ECF No. 24]; (2) Principal's cross-claims against C&C seeking contribution and indemnification [ECF No. 28]; and (3) C&C's cross-claims against Principal similarly seeking contribution and indemnification [ECF No. 31]. After the conclusion of discovery, Principal and C&C moved for summary judgment on all of the claims asserted against them.

## II. Discussion

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "In assessing the record to determine whether there is a genuine issue [of material fact] to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways

Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. (citing Anderson, 477 U.S. at 249). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

**A. Klein's Negligence Claims**

Under New York law,[3] "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (quoting Solomon ex rel. Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985)). We

---

[3] We apply New York substantive law because the parties tacitly agree that it applies. See Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (omission in original) (quoting Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000))).

7

consider whether summary judgment is warranted on Klein's claim against each defendant in turn.

   1.   **Against Principal**

      a.   **Duty**

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138 (2002). "[O]rdinarily, breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor." Church ex rel. Smith v. Callanan Indus., Inc., 99 N.Y.2d 104, 111 (2002). However, the New York Court of Appeals has recognized "three situations in which a party who enters into a contract to render services may be said to have assumed a duty of care -- and thus be potentially liable in tort -- to third persons." Espinal, 98 N.Y.2d at 140. "The first is where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk." Church, 99 N.Y.2d at 111. "The second set of circumstances giving rise to a promisor's tort liability is where the plaintiff has suffered injury as a result of reasonable reliance upon the defendant's continuing performance of a contractual obligation." Id. "Third, we have imposed tort liability upon a promisor 'where

the contracting party has entirely displaced the other party's duty to maintain the premises safely.'" Id. at 112 (quoting Espinal, 98 N.Y.2d at 140).

Principal contends at the threshold that the exceptions that the New York Court of Appeals recognized in Espinal are limited to context of snow removal, and that Espinal is therefore inapplicable to it because it did not perform any snow removal services. This argument simply cannot be reconciled with Espinal's reliance on New York Court of Appeals precedents arising out of entirely different factual circumstances. Indeed, Espinal considered H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160 (1928), which concerned low water pressure at fire hydrants; Eaves Brooks Costume Co. v. Y.B.H Realty Corp., 76 N.Y.2d 220 (1990), which addressed malfunctioning sprinkler systems; and Palka v. Servicemaster Management Services Corp., 83 N.Y.2d 579 (1994), which analyzed falling ceiling fans, in reaching its holding. See Espinal, 98 N.Y.2d at 139-40. Moreover, Espinal's expansive progeny has extended this three-prong framework to myriad other factual contexts. See, e.g., Church, 99 N.Y.2d at 112 (applying Espinal to the allegedly negligent installation of highway guardrails); Landon v. Kroll Labs. Specialists, Inc., 22 N.Y.3d 1, 6 (2013) (applying Espinal to allegedly negligent laboratory drug testing). Indeed, Espinal, by its very terms, applies generally to "contractual situations involving possible tort liability to third

9

persons." 98 N.Y.2d at 139. We will thus consider whether any of the Espinal exceptions apply here -- Principal's non-involvement in the specific act of snow removal notwithstanding.

Klein does not argue that Principal -- which did not engage in snow removal on its own -- created or increased a risk; nor does Klein argue that he detrimentally relied on Principal's continued performance of a contractual obligation. Rather, he relies on the third Espinal exception, "where the contracting party has entirely displaced the other party's duty to maintain the premises safely." Espinal, 98 N.Y.2d at 140. For the promisor to displace the promisee's duty, the promisee must have owed a duty to the plaintiff in the first instance.

Principal expends substantial effort in arguing that the Times was not the owner of the parking lot in question and that the Times therefore could not have owed a duty to Klein (that would be subject to displacement under the third Espinal exception). This argument relies on the assumption that the Times did not owe a duty to Klein because it merely leased the parking lot rather than owned it, but this assumption is questionable at best. As the New York Court of Appeals has recognized, "the person in possession and control of property is best able to identify and prevent any harm to others," and therefore "a person who chooses to take possession and control of property is fairly charged with the responsibility of maintaining it and should expect to be held

responsible for any defects." Butler ex rel. Butler v. Rafferty, 100 N.Y.2d 265, 270 (2003). Legal ownership is not dispositive: a landowner not in possession and lacking control may not be liable, just as a tenant in possession and control may be liable. See, e.g., Potter v. Furniture Mfrs. Bldg., Inc., 26 N.Y.2d 269, 272 (1970) (per curiam) (holding owner not liable while affirming liability against tenant); see also, e.g., Freidah v. Hamlet Golf & Country Club, 272 A.D.2d 572, 572 (2d Dep't 2000) (referring to the "owner or possessor").

Here, a reasonable jury could conclude that the Times sufficiently possessed and controlled the parking lot in question such that it owed a duty to Klein. Indeed, the Times sufficiently controlled the lot such that it contracted with Principal to provide maintenance services and that the parking lot constituted part of the College Point Facility to which the facility maintenance agreement applied. In turn, it is undisputed that the facility maintenance agreement required Principal to "provide comprehensive facility management services," FMA § 1.1, which is the type of "comprehensive and exclusive" contractual obligation satisfying the third Espinal exception. See Espinal, 98 N.Y.2d at 140; Palka, 83 N.Y.2d at 588-89. A reasonable jury could conclude, as a factual matter, that the Times possessed and controlled the parking lot, and from this factual conclusion follows, as a matter of law, that Principal owed a duty to Klein by virtue of the FMA

11

between Principal and the Times. Principal is therefore not entitled to summary judgment based on lack of duty.

### b. Notice

Even when a duty runs to the plaintiff, "a landowner, who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition." Taylor v. United States, 121 F.3d 86, 89-90 (2d Cir. 1997) (citing Gordon v. Am. Museum of Nat. Hist., 67 N.Y.2d 836, 838 (1986)); see also Viera v. Rymdzionek, 112 A.D.3d 915, 915 (2d Dep't 2013) ("A real property owner or person in possession or control of real property will be held liable for a slip-and-fall accident involving snow and ice on his or her property only when the defendant created a dangerous condition or had actual or constructive notice thereof."). Here, there is no suggestion that Principal (which was not involved in the snow removal process) created the ice condition on which Klein slipped or that Principal had actual notice, and Klein does not argue otherwise.

Accordingly, Principal is entitled to summary judgment unless a reasonable jury could find that it had constructive notice of the ice condition. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon, 67 N.Y.2d at 837.

"In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue." Taylor, 121 F.3d at 90. Because "[c]onstructive notice of a particular condition is inextricably intertwined with the concept of foreseeability," "awareness of a general dangerous condition is not enough to charge a defendant with constructive notice of the particular dangerous condition that caused an injury." Id. (emphasis omitted).

The only evidence on which Klein relies to charge Principal with constructive notice is a series of weather records from weather stations at nearby LaGuardia Airport and slightly farther John F. Kennedy Airport. See Rodriguez Decl. ex. 17. According to Klein, these records "establish that the ice existed for a long enough period of time that Defendant Principal should have been able to remedy it." [Klein Opp'n 15, ECF No. 80.] In particular, he argues, the temperature "only fluctuated between 29 and 34 degrees" on February 5 and 6 such that it is "evident that the dangerous ice condition was present for at least 2 days, February 5th and 6th, as there was no opportunity for any melting or refreeze to occur." [Klein Opp'n 15.]

We disagree, as no reasonable jury could find that Principal had constructive notice of the ice on which Klein slipped based on this meteorological speculation. Cf. Saavedra v. City of New York,

137 A.D.3d 421, 422 (1st Dep't 2016) (rejecting reliance on meteorological data to establish a triable issue of fact as to constructive notice). As an initial matter, Klein's argument is logically flawed in that the freezing point of water (i.e., the melting point of ice) under regular conditions is 32 degrees -- squarely within the range of temperatures that Klein identifies.[4] But even assuming that the ice existed for such a period of time, Klein has identified no evidence from which a reasonable jury could find that the ice had been "visible and apparent." Gordon, 67 N.Y.2d at 837. Indeed, Klein's argument that C&C's snow moving activities on February 6 "exposed areas of ice" [Klein Opp'n 8 (emphasis added)] suggests that the ice would not have been visible and apparent to Principal for the entirety of the two-day period. This conclusion is bolstered by the undisputed fact that Klein himself did not notice the ice before he slipped and fell.

In sum, Klein has not raised a genuine issue of material fact as to whether Principal had constructive notice of the ice condition on which he slipped, and Principal is entitled to summary judgment accordingly.

---

[4] Whether or not C&C salted the parking lot on February 6 is disputed. A reasonable jury could find that C&C did not apply salt on February 6, given the absence of a separate charge for salting listed on the invoices sent by C&C to Principal. Of course, given that the application of salt reduces the freezing point of water, Klein's reasoning here would be even more speculative if C&C had in fact salted the lot on February 6.

14

## 2. Against C&C

We again consider whether any of the three Espinal exceptions apply such that C&C owed a duty to Klein. Klein does not argue that he detrimentally relied on the contact between Principal and C&C, and he does not -- wisely and unlike Principal -- argue that C&C displaced Principal's duty to maintain the premises by virtue of a "comprehensive and exclusive" maintenance contract as to snow removal (which Principal itself displaced from the Times under the third Espinal exception).[5] Rather, Klein contends that the first exception -- applicable to a promisor who "creates an unreasonable risk of harm to others, or increases that risk" -- applies.

New York courts have considered the applicability of this first Espinal exception in the specific context of snow removal on numerous occasions. Generally, "by merely plowing the snow, as required by [a] contract, defendant's actions c[an] not be said

---

[5] Curiously, Principal argues that C&C undertook an exclusive and comprehensive maintenance agreement under the third Espinal exception. However, the snow plow agreement between Principal and C&C provides that "work will be on an 'Automatic Basis' for snow accumulations of two (2") inch[es] or more," and that work for smaller accumulations "will be on an 'On-Call' by the 'Customer' basis." Rodriguez Decl. ex. 10. These obligations cannot be characterized as "comprehensive and exclusive." See Espinal, 98 N.Y.2d at 141 ("By the express terms of the contract, [the contactor] was obligated to plow only when the snow accumulation had ended and exceeded three inches. This contractual undertaking is not the type of 'comprehensive and exclusive' property maintenance obligation contemplated by Palka."). Indeed, the First Department has expressly held in another case involving Principal and C&C that "[C&C] did not completely absorb the landowner's duty to maintain the premises safely" because "the snow-removal contract between [Principal] and [C&C] obligated [C&C] to plow only after two inches of snow or more fell, or after [Principal] asked it to do so." DeCanio v. Principal Bldg. Servs., Inc., 115 A.D.3d 579, 580 (1st Dep't 2014). Principal's duty to Klein therefore is not displaced by C&C's contractual obligations to Principal, and its argument to the contrary borders on the frivolous in light of well-established New York case law of which Principal should obviously have been aware.

15

'to have created or exacerbated a dangerous condition.'" Fung v. Japan Airlines Co., 9 N.Y.3d 351, 361 (2007) (quoting Espinal, 98 N.Y.2d at 142); cf. DeCanio v. Principal Bldg. Servs. Inc., 115 A.D.3d 579, 579-80 (1st Dep't 2014) ("Further, [subcontractor]'s acts of plowing and salting the employee parking lot where plaintiff slipped and fell, as required by its contract with [contractor] cannot be said to have 'created or exacerbated a dangerous condition.'" (quoting Fung, 9 N.Y.3d at 361)). Rather, for the exception to apply, a plaintiff must make "some showing that the contractor left the premises in a more dangerous condition than he or she found [it]." Foster v. Herbert Slepoy Corp., 76 A.D.3d 210, 215 (2d Dep't 2010).

That is, as Judge Brodie has explained, New York law distinguishes instances where a defendant "fail[s] to remove all snow or ice from a location" (in which case the first Espinal exception does not apply) and instances where "the residue of snow removal efforts could be said to have caused the icy condition or increased the risk of harm to others" -- such as those where the residue of snow removal melts and refreezes as ice -- in which case the exception may apply. Haskin v. United States, No. 10-cv-5089 (MKB), 2015 WL 3971730, at *12 (E.D.N.Y. June 30, 2015) (canvassing New York authorities); see, e.g., San Marco v. Village/Town of Mount Kisco, 16 N.Y.3d 111, 118 (2010) (collecting cases and noting that a defendant may be liable when "the ice upon

which the plaintiff slipped was formed when snow piles created by the [defendant]'s snow removal efforts melted and refroze" (quoting Smith v. County of Orange, 51 A.D.3d 1006, 1006 (2d Dep't 2008))).

Here, Klein argues that C&C "created the condition as they removed snow and, in doing so, exposed areas of ice which they did not remove." [Klein Opp'n 8.] That is, Klein expressly disclaims the possibility that the ice condition on which he slipped resulted from melting and refreezing, and contends instead that the ice condition persisted for at least two days -- i.e., that the ice condition predated C&C's snow removal efforts on February 5 and its snow moving efforts on February 6. [Klein Opp'n 9.] Put differently, Klein's theory is that C&C failed to clear the parking lot sufficiently thoroughly -- not that C&C's snow removal efforts created the ice on which he slipped or rendered the parking lot more dangerous. The first Espinal exception therefore does not apply, and Klein's claim fails as a matter of law because he has not established a duty running to him from C&C. See Haskin, 2015 WL 3971730, at *12; see also Fung, 9 N.Y.3d at 361; DeCanio, 115 A.D.3d at 579-80. Accordingly, summary judgment will be granted in C&C's favor on Klein's negligence claim.

### B. Principal and C&C's Cross-Claims

We have concluded that neither Principal nor C&C are liable to Klein as a matter of law. In turn, because Principal and C&C's

17

cross-claims are contingent on each being liable to Klein in the first instance, we need not address the validity of these claims. There is no primary liability as to either defendant for which contribution or indemnification is to be sought, and Principal's motion for summary judgment against C&C and C&C's motion for summary judgment against Principal are each denied as moot.

## III. Conclusion

Principal's motion for summary judgment [ECF No. 68] is granted as to Klein's claim against it, and C&C's motion for summary judgment [ECF No. 51] is also granted as to Klein's claim against it. Because neither defendant is liable to Klein, the portions of their motions relating to their cross-claims are denied as moot.

The Clerk of the Court is respectfully directed to enter judgment for defendants and to terminate this case and any motions pending therein. The Clerk of the Court is also directed to seal the document filed as ECF No. 51-9, which contains sensitive information subject to redaction under Rule 5.2(a) of the Federal Rules of Civil Procedure and was filed by counsel in contravention of the "Important Notice of Redaction Responsibility" displayed prominently on the login page of this district's ECF system that every attorney must expressly acknowledge prior to filing.[6]

---

[6] Having previously reminded counsel as much, the Court again admonishes the parties that under Rule 5(d)(1) of the Federal Rules of Civil Procedure,

**SO ORDERED.**

Dated: New York, New York
September 5, 2018

*/s/ Naomi Reice Buchwald*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

"disclosures under Rule 26(a)(1) or (2)[,] . . . depositions, interrogatories, requests for documents . . . , and requests for admission" "<u>must</u> not be filed until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d)(1) (emphasis added).